Case number 3-16-0206, People of the State of Illinois at the lead by Thomas Aredo v. Michael Smith, a felon by Adam Weaver. Mr. Weaver, you want this one? Good morning, Your Honors and Counsel. My name is Adam Weaver with the Office of the State Appellate Defender. I'm representing the defendant's case. May it please the Court. The issue today is whether the Court erred in denying the defendant's second-stage post-conviction petition where it believed that, although counsel was deficient for failing to advise of the Sexually Violent Persons Act, defendant could not show prejudice. Our argument today follows the familiar two-pronged Strickland standard in that counsel's representation was objectively unreasonable for not advising the defendant of the SVP Act, and secondly, that the Court erred because defendant could show prejudice where it would have been rational under the circumstances for him to reject the plea and go to trial. Now, turning to the first point, it was objectively unreasonable for counsel to let the defendant plead guilty to predatory criminal sexual assault without at least mentioning the SVP Act, and that his conviction would lead to an evaluation under the Act and possible lifelong commitment as an SVP. Even Judge Broad found that counsel was deficient and was surprised that counsel did not tell defendant about it and agreed that everyone should have known that the conviction would trigger the SVP Act. Nevertheless, trial counsel did not tell the defendant about the Act. Mr. Smith fled guilty and served his eight-and-a-half years and was surprised with the SVP petition as he was walking out the prison doors. That's what's so unreasonable about counsel's representation in this case. Now, the State argues that when the defendant pled guilty in 2005, the Court followed the strict direct versus collateral consequences scheme and that our Supreme Court's decision in 2012 in People v. Hughes does not apply retroactively. However, our argument is more fundamental than that. What is considered reasonable has always been based on the practice, expectations, and professional norms of the legal community. Now, those professional norms require counsel to discuss with the client what may be obvious consequences of his charge and his guilty plea and the conviction. Therefore, counsel had a duty to adequately advise the defendant in this case of the pros and cons of accepting his plea agreement and foregoing trial, including especially in this case where his sexually based offense would have very serious and obvious consequences. Well, is there an argument he was deficient, counsel was deficient? I'm sorry, Your Honor? Is there an argument that counsel was deficient in not doing that? Yes. I mean, it seems that it would be obvious for him to tell the defendant that his conviction would lead to. . . But that isn't sufficient that he just is deficient, is it? I'll slow you, Your Honor. No, you don't ask me. I ask you. Well, I. . . Okay. I mean, I'm asking you this question. I understand. Okay. But if. . . I don't understand how it wouldn't be deficient if counsel, to have adequate representation, he should have told the client that Seth Dunn said, this charge, this conviction will lead to an evaluation under the SVP Act, which could lead to your lifelong confinement. And that would have affected whether or not he decided to plead guilty. That would be the deficiency. But just demonstrating that he was deficient, is that enough to, you know, get you on the dance floor under the Strickland? I understand, Your Honor. No, he also has to show prejudice. Well, that's really what the whole meat of this case is about. Absolutely, Your Honor. Okay. Let's go to it. Excellent. So moving to that, the trial court erred when it dismissed Mr. Smith's petition because it only focused on the relative benefit of his plea and the strength of his case at trial. But prejudice is not limited to allegations of actual innocence or a plausible defense at trial. Those things do not apply when it comes to the defendant's understanding of the consequences of the guilty plea. Judge Broad did not consider that it would have been rational under the circumstances had the defendant known the consequences of the SVP Act would have been rational for him to reject the plea and go to trial. How so? Why would it be rational? Well, in this case, Your Honor, Smith's decision would have been based on the full knowledge of if he would have pled guilty, it may not be just the 12 years that he pled guilty to. So Smith's choice. Well, I mean, it was a negotiated plea, wasn't it? Well, it wasn't a negotiated 12-year cap. A cap, yeah. It was a cap of 12 years. What was the range of sentencing? It could have been up to 30 years, Your Honor. It could have been up to 30. Followed by the SVP petition. Which is a collateral civil commitment proceeding. At the time it was, Your Honor, yes. The time that it's changed? With people to use in 2012, the Supreme Court, our Supreme Court, has moved that the SVP Act along the lines of deportation, where it's no longer, excuse me, where counsel needs to advise defendants of the SVP Act. Specifically need to be advised of the SVP Act. Correct, Your Honor. And is that retroactive? It has not been. People v. Hughes has not been found retroactive. But as we were arguing, on the first prong, it's really different. It's a fundamental deficiency. And although Hughes does follow Padilla, it hasn't been found retroactive. And the effect is greater than deportation in Padilla because the SVP Act is a serious deprivation of, excuse me, a serious deprivation of liberty instead of just deportation. But, Your Honor, you are correct that it has not been found to be retroactive yet. That's a problem, isn't it? That is currently a problem. Yes. And the state will argue that people v. Hughes does not apply retroactively. So basically he's saying that he would be better off to roll the dice because he could be found not guilty, regardless of whether or not he has a plausible defense under the Padilla line of reasoning, that it's enough for him to show that he would have chosen to go to trial because the consequence of the plea or a guilty finding would subject him to this collateral process at the end. That's correct, Your Honor, that it would not, under the circumstances, it would not have been irrational for him to reject this plea and go to trial, even if it was a small chance of victory at trial. The consequences for him were so great that it would not have been irrational under these circumstances. The defendant's choice is. That would be good if he was convicted today, right? Absolutely, Your Honor. Unlike Hughes, which is kind of a, if you look at the facts of Hughes, it's kind of a fluke case so much that Hughes had the benefit of Padilla being, the opinion and decision of Padilla came down when he was still on direct appeal. Unlike Hughes, most of. Where does Lee fit in? All right, Lee fits into the prejudice side. Smith's choice was similar to the defendant in Lee who was facing deportation. To Lee, it didn't matter how many years of a prison sentence he received if it meant deportation at the end. Now, Smith's decision is maybe more, or maybe is more stronger than Lee's decision because the serious liberty interest at stake in the SVP proceedings. Obviously, the consequences of involuntary commitment are even more severe than just being deported. Just being deported, we shouldn't minimize that. Well, no, Your Honor. Generally, generally speaking. It seems like people are coming this way, not going that way. I don't disagree, Your Honor. But in the deportation cases, there's discussion that the Department of Human Services had a policy of beginning the deportation process following certain convictions. Sexually violent person petition is a little different. The policy is up to the state's attorney in office of whether to file a petition or not. Yes, Your Honor, that is correct. I'm not as certain. In fact, Mr. Taranis was the state's attorney. I just know that because in 2005 I worked in Rock Island. He was the state's attorney in 2005. He didn't file any petitions. He didn't make any negotiations about not filing petitions. And then when state's attorney McGehee came into office in 2006, I think it was, I'm not certain, he made a different decision. So the consequences of having a sexually violent person petition filed against you are not quite as certain as a policy that supports deportation. Yes, Your Honor, and to be precise, I'm not sure if state's attorney McGehee was the one who actually filed the petition in this case because the I could be wrong. I just know it wasn't state's attorney Taranis. Absolutely, Your Honor. I was going to point out that I believe traditionally the attorney general usually has the first opportunity to file SVP petitions and then they can negotiate with the state's attorney. I might be wrong with that. However, it doesn't really change anything in our situation. But back to your question, no, on paper it's not an automatic SVP petition. The SVP Act enumerates charges that will be qualified for, could be qualified for an evaluation under the SVP Act. So the evaluation is somewhat guaranteed, but you are correct that the petition is not guaranteed. Not automatic. Correct. Where some, on the deportation side, there are charges that are automatically deportable. Now getting Do you think Hughes is still in the long light of Lee? I think that it is, Your Honor, in that it Hughes is such an odd case. I don't see how the court in Hughes could have decided that an SVP petition would not have affected the defendant deciding to plead guilty. I think the real key in Hughes was that the defendant testified at some point, my attorney told me about SVP and I still decided to plead guilty. I think that's really, when I read it, I think that's really what it hinges on. However, I think that after Lee, with Lee's focus on whether it is rational under the circumstances to reject the plea and go to trial, Lee definitely focuses more heavily on that than Hughes did. Hughes seems to really hover around the first portion of ineffectiveness for trial strategy where we started, where you have to articulate a defense at trial or innocence. But I think that you are correct that Hughes maybe really expands on where, or excuse me, Lee really expands where Hughes needed to go in 2012. Thank you. As we were saying, if defendant, in this case, if defendant had decided to go to trial with all this information and one, he would have avoided the SVP act completely. However, he was not allowed to make that choice because counsel did not advise him of that possibility. Had he known of the effects of the SVP act, it would not have been rational for him to reject that plea and go to trial. Mr. Smith respectfully requests the court reverse and remand for a third stage hearing. Thank you. Thank you, Mr. Rubin. Mr. Arado. May I please report? Good morning, Your Honor. Counsel. This case is about the retroactive application of Hughes to defendant's conviction, the guilty plea that occurred in 2005. The State argued that retroactive application below. Judge Broad did not decide upon that basis. But, of course, this Court may affirm on any basis in the record that argument was preserved below. Hughes, of course, recognizes that prior to Padilla, the collateral consequences distinction between direct and the distinction between collateral and direct consequences was the law in Illinois. Subsequently, Padilla made it a question whether it was there is a distinction between those two. And, of course, Hughes affirmed that when you have an SVDP act case, there does need going forward to be some advisement of the possibility. Court recognized, though, in Hughes, again, that it was collateral consequence, and that the case law prior to that was the defendants did not have to be advised of that. Chidas, after 2013, said Padilla does not apply retroactively. So, since Hughes is based upon Padilla, and Chidas says Padilla is not retroactive, Hughes would, therefore, also not be retroactive. It's a new rule. New rules don't get applied retroactively. Mr. Smith's conviction was final in 2005. He did not file a timely motion to withdraw his guilty plea. He did not file a direct appeal. This is all collateral. He had several collateral attacks prior to this one. And, therefore, under the standard at the time in 2005, his attorney was not required to advise him as to the collateral consequence of the possibility, and indeed his only possibility, of future sexually violent person evaluation. Therefore, there's really nothing further that needs to be said about this. Therefore, for the remainder of our brief, I believe, addresses the arguments of counsel. Unless this Court has any further questions, we'll stand on the remainder. Thank you, Mr. O'Rourke.  Thank you, Your Honor. The State is correct that, as I stated before, that at the time in 2005, the Court followed a scheme, a rigid scheme, between direct consequences and collateral consequences. However, the Supreme Court has never distinguished between collateral consequences and direct consequences to define reasonable assistance, and our courts have granted relief, even though it may have been based on a collateral consequence. Now, admittedly, those cases were based on an attorney's affirmative misadvice, but the Court has held that there's no difference between misadvice and an omission, and that the duty to give correct advice applies to affirmative misadvice, as well as the fact that there's no difference between misadvice and an omission. There is no failure to give any advice at all. That would be really the only distinction that I would make between that and that argument. If the Court has no more questions, I respectfully request to resume our meeting for Thursday's hearing. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.